IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GUADALUPE LOPEZ, | ) | |
| Petitioner, | ) | No C 04-1621 JSW (PR) |
| | ) | |
| vs. | ) | ORDER DENYING PETITION |
| | ) | FOR A WRIT OF HABEAS |
| JOSEPH McGRATH, Warden, | ) | CORPUS |
| Respondent. | ) | |
| _____ | ) | |

**INTRODUCTION**

Guadalupe Lopez, a prisoner of the State of California, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Per order filed on September 7, 2004, this Court found that the petition, liberally construed, stated three cognizable claims under § 2254 and ordered Respondent to show cause. Respondent filed an answer. Petitioner has not filed a traverse. This order denies the petition for writ of habeas corpus on the merits.

**PROCEDURAL BACKGROUND**

On October 23, 2001, the Santa Clara District Attorney filed an information charging Petitioner with three counts of attempted murder, Cal. Penal Code §§ 187, 189, 664, two counts of assault with a deadly weapon, Cal. Penal Code § 245, one count of child endangerment, Cal. Penal Code § 273a(a), and

one count of making criminal threats, Cal. Penal Code § 422.  The information alleged that the first and second attempted murders were premeditated, Cal. Penal Code § 189, and that Petitioner caused great bodily injury by discharging a firearm, Cal. Penal Code § 12022.53(d), during the commission of the first count of attempted murder.  The information also alleged that all the attempted murders and assaults involved various firearm and bodily injury enhancements.

The following day, pursuant to a plea bargain dismissing the premeditation allegations and two enhancements, including the Cal. Penal Code § 12022.53(d) enhancement for inflicting great bodily injury by discharging a firearm, Petitioner pled guilty to all counts and remaining enhancements. Petitioner subsequently moved to withdraw his guilty pleas.  Petitioner also moved for substitute counsel under *People v. Marsden*, 2 Cal.3d 118 (Cal. 1970). After conducting a hearing, the court denied both motions on January 15, 2002. The next day, the court sentenced Petitioner to 34 years and eight months in prison.

Petitioner filed a direct appeal and a habeas corpus petition with the California Court of Appeal, Sixth Appellate District.  On June 27, 2003, the court affirmed his conviction and denied his habeas petition.  Petitioner then filed petitions for review of the direct appeal and habeas petition with the California Supreme Court.  On September 24, 2003, the court denied both petitions. Petitioner filed the instant matter on April 26, 2004.

## STATEMENT OF THE FACTS

The California Court of Appeal summarized the factual background of the case as follows:

> For over 10 years, defendant exposed Maria Villalobos, his "common law wife" and the mother of his three children, to alcohol-fueled arguments; threats to kill her if she left him; assaults with such weapons as his hands, a hunting knife, a handgun, a

table, and a glass; a game of Russian roulette with a loaded 9 millimeter handgun; an attempt to commit suicide with a sniper rifle which Villalobos took away from him; and boasts that he was a professional killer, had murdered people in Seattle, and had killed someone in a martial arts class. He capped this treatment on April 15, 2000, by attacking Villalobos after a birthday party for their 12-year-old son Luis Emmanuel because there was no beer left. Defendant wanted to go to Villalobos's sister Jovita's nearby apartment to find more beer and Villalobos did not want him to drink anymore. She asked him to stay home which upset defendant because she was trying to tell him what to do. He grabbed her and pushed her against the wall, put his hands around her neck and said he should kill her, hit her over the head with a clock, broke a wooden chair and swung one of the pieces around as if he were practicing karate, held the piece against Villalobos's neck and stated, "I should just get rid of you."

Jovita heard the commotion and went to the couple's apartment where she got into an argument with defendant for telling him and Villalobos to stop fighting. When Jovita returned to her own apartment, Luis Emmanuel followed her to apologize for defendant's behavior. Minutes later, defendant arrived at Jovita's apartment with a gun. He let himself into the apartment and demanded that Jovita return his son. Jovita refused and told defendant he was too drunk. Defendant pulled the pistol out of his waistband, pointed it at Jovita's head and threatened to kill her. She tried unsuccessfully to knock the gun out of his hand as he fired and he shot her in the head. Defendant then turned to Dolores Zamora who was present in the apartment, pointed the gun at her and said, "I also got some for you." Jovita hit him in the arm as he fired at Zamora causing the bullet to hit the ceiling.

Villalobos heard screaming and gunfire at Jovita's apartment. When she entered the apartment, she felt someone grab her waist and push her toward the door. She was shot. The bullet entered her left hip, pierced her bladder, and exited her right leg. Zamora called the police, but defendant grabbed the telephone, pushed her away, and told the operator that nothing had happened and everything was fine.

*People v. Lopez*, 2003 WL 21481036, at 2 (Cal. Ct. App. June 27, 2003)

(footnotes omitted).

## **STANDARD OF REVIEW**

This Court may entertain a petition for a writ of habeas corpus "in behalf

of a person in custody pursuant to the judgment of a state court only on the

ground that he is in custody in violation of the Constitution or laws or treaties of

the United States."  28 U.S.C. § 2254(a).  A district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Under the 'contrary to' clause, a federal habeas court may grant the writ if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams*, 529 U.S. at 413.  As summarized by the Ninth Circuit: "A state court's decision can involve an 'unreasonable application' of federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable."  *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000) *overruled on other grounds*; *Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003) (citing *Williams*, 529 U.S. at 405-07).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must not only be erroneous, but objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).  In deciding whether a state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of the Petitioner's claim in a reasoned decision.  *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Where the state court gives no reasoned explanation of its decision on a Petitioner's federal claim and there is no reasoned lower court decision on the claim, a federal habeas court should conduct an independent review of the record.  *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the state court decision.  *Williams* 529 U.S. at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).  While the circuit law may be "persuasive authority" for the purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied.  *Id.*

In his petition for writ of habeas corpus, Petitioner asserts three claims: (1) he was deprived of due process because the trial court failed to appoint new counsel when trial counsel stated his belief that there was no legal basis for

moving to withdraw Petitioner's guilty pleas; (2) he was deprived of effective assistance of counsel because trial counsel gave him incorrect advice regarding the probable consequences of going to trial; and (3) he was deprived of due process because the trial court failed to provide him with an interpreter when he pled guilty.

### DISCUSSION

**1.     Failure to Appoint New Counsel**

Petitioner claims that the trial court violated his due process rights when it failed to appoint new counsel after defense counsel stated his belief that there was no legal basis for Petitioner to withdraw his guilty pleas, despite Petitioner's arguments to the contrary.  In the months following his October 24, 2001 guilty pleas, Petitioner "dispatched five separate handwritten letters to the court" announcing several complaints Petitioner had about defense counsel and also requesting that the court withdraw his guilty plea.  *Lopez,* 2003 WL 21481036, at 3.  On January 15, 2002, the trial court held a hearing on Petitioner's complaints about defense counsel, his request for new counsel, and his desire to withdraw his pleas (a "*Marsden* hearing," *see Marsden*, 2 Cal.3d at 118).  *Id*. at 4.  During the hearing, defense counsel stated that, upon review, he still did not believe that Petitioner had a legal basis to withdraw his guilty pleas.  Reporter's Transcript on Appeal ("RT"), 32 (Resp't. Ex. C).  The trial court denied Petitioner's motion to withdraw his pleas and his request for new counsel.  *Lopez*, 2003 WL 21481036, at 4.

On appeal, Petitioner argued that the trial court did not adequately consider his motions at the *Marsden* hearing.  *Id*. at 7.  Petitioner further alleged that the trial court's failure to provide new counsel who would comply with his requests, i.e., move to withdraw his guilty plea, constituted a deprivation of

effective assistance of counsel. *Id.* The California Court of Appeal disagreed. *Id.* The court explained:

> The court held a hearing on defendant's complaints against counsel, made a detailed inquiry into the basis for defendant's complaints against counsel, and decided they were unfounded. The court determined in its discretion that there was no need to appoint substitute counsel to represent defendant because there was no basis for the motion to withdraw the pleas. A defense attorney is not constitutionally ineffective, and no deprivation befalls a defendant, if counsel does not move to withdraw the plea due to a good faith belief that there was no merit to the motion. (*People v. Brown* (1986) 179 Cal.App.3d 207, 215, 224 Cal.Rptr. 476.) Defendant was unhappy that he pled guilty because he was innocent. The trial court had a copy of the change of plea transcript in which defendant unequivocally admitted guilt, and the court elicited from Davis an explanation of the weaknesses of the case against defendant which established the evidence against defendant was overwhelming. Defendant said he did not premeditate and deliberate whether to try to kill his wife. He did not plead guilty to a charge that required premeditation and deliberation. Since there was no showing of mistake, duress, or other overreaching factor that deprived defendant of his exercise of free will in entering the pleas, there were no grounds for him to withdraw the pleas. The court did not abuse its discretion in denying defendant's request for a new attorney and did not fail to adequately consider defendant's motion to withdraw the pleas.

*Id.*

## A.     Legal Standard

The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is properly considered in federal habeas. *Bland v. California Dep't of Corrections,* 20 F.3d 1469, 1475 (9th Cir. 1994), overruled on other grounds by *Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000) (en banc). The Ninth Circuit has held that when a defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction. *Id.* at 1475-76; *United States v. Robinson,* 913 F.2d 712, 716 (9th Cir. 1990); *Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir. 1982). The inquiry need only be as comprehensive as the circumstances reasonably would permit, however. *King v. Rowland*, 977 F.2d

1354, 1357 (9th Cir. 1992) (record may demonstrate that extensive inquiry was not necessary).

The ultimate inquiry in a federal habeas proceeding is whether the petitioner's Sixth Amendment right to counsel was violated. *Schell*, 218 F.3d at 1024-25 (overruling earlier circuit precedent that had stated that habeas court's inquiry was whether the state court's denial of the motion was an abuse of discretion). That is, the habeas court considers whether the trial court's denial of or failure to rule on the motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Id*. at 1026.

**B.     Analysis**

The California Court of Appeal's rejection of Petitioner's claim that the trial court violated his due process rights when it declined to provide him with substitute counsel upon his request was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

After Petitioner lodged several "seemingly substantial complaint[s]" against defense counsel in his letters to the trial court, the court conducted a *Marsden* hearing. *See Schell*, 218 F.3d at 1475-76; *Robinson,* 913 F.2d at 716; *Hudson*, 686 F.2d at 829. At the hearing, Petitioner reiterated his desire to withdraw his guilty pleas and his belief that defense counsel was not being helpful in this regard. RT 31-32. At the trial court's request, defense counsel responded to each of Petitioner's complaints about his conduct, including Petitioner's concerns about defense counsel's failure to request a motion to withdraw

Petitioner's plea. *Id.* at 42-53. Having made a "thorough inquiry into the reasons for [Petitioner's] dissatisfaction," the trial court found that Petitioner's claims were unfounded, specifically that there was no need to appoint substitute counsel because Petitioner had no valid legal basis to move to withdraw his guilty plea. *Id.* at 53. *See Schell*, 218 F.3d at 1475-76; *Robinson,* 913 F.2d at 716; *Hudson*, 686 F.2d at 829.

Nothing in the facts established at the *Marsden* hearing supports Petitioner's argument that his Sixth Amendment right to counsel was violated when the trial court declined to substitute counsel.[1] *See Schell*, 218 F.3d at 1024-25. Defense counsel's decision not to move to withdraw Petitioner's guilty plea was not the result of a "lack of communication or other significant impediment" in the attorney client relationship" that would give rise to a valid Sixth Amendment claim. *See Id.* at 1026. To the contrary, defense counsel did not move to withdraw Petitioner's guilty plea because he believed, quite reasonably, that such a motion would be meritless.[2] Accordingly the court was under no obligation to grant Petitioner's request for substitute counsel.

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a district court to presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner fails to present any evidence whatsoever to rebut the presumption that the trial court's factual findings in the *Marsden* hearing were correct.

[2] Trial counsel's failure to move to withdraw Petitioner's plea would certainly not rise to the level of a *Strickland* violation. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Put simply, trial counsel cannot have been ineffective for failing to raise a meritless motion. *See Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996); *see*, e.g., *Lowry v. Lewis,* 21 F.3d at 346 (failure to file suppression motion not ineffective assistance where counsel investigated filing motion and no reasonable possibility evidence would have been suppressed).

9

Petitioner is not entitled to federal habeas relief on his claim regarding defense counsel's failure to move to withdraw his guilty plea because the California Court of Appeal's rejection of the claim was not contrary to, or involved an unreasonable determination of, clearly established Supreme Court precedent, or an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

## 2.   Ineffective Assistance of Counsel

Petitioner next claims that he was deprived of effective assistance of counsel because his trial counsel gave him incorrect advice regarding the probable consequences of going to trial. As discussed above, at the *Marsden* hearing defense counsel responded to Petitioner's complaints about his conduct. In part, defense counsel "explained to the court his analysis of the weaknesses in [Petitioner's] case." *Lopez*, 2003 WL 21481036, at 4. Specifically, defense counsel testified that the "inconsistencies" in Ms. Villalobos' testimony "were . . . going to be problematic at trial." RT at 36. Defense counsel cited allegations by Ms. Villalobos that Petitioner "had engaged in a nine-year pattern of domestic violence and abuse"; allegations which defense counsel believed would likely be admissible under Evidence Code section 1109 and could support a jury finding of premeditation. *Id*. at 36-37. Given these weaknesses, defense counsel stated at the hearing that the best outcome for Petitioner after trial would be "to have lessers of [Penal Code section] 245s, felony assaults." *Id* at 37. It was at this point in defense counsel's analysis at the hearing that he made the following statement which Petitioner now alleges caused his plea to be involuntarily entered:

> Unfortunately, in regards to the 25-to-life gun enhancement that attached to Count 1 [attempted premeditated and deliberated murder of Maria Villalobos], that still would attach to an assault with a deadly weapon charge. It still would put us in indeterminate

1
and still would have had [defendant], had he received [Penal Code
section] 245s instead of attempted murder, would have had him
2
doing indeterminate sentence with the determinate portion being in
the area of not more than what he is currently receiving. So the
3
after-trial result-I thought for him what was probably his best result
was still going to result in an indeterminate to life sentence. And the
4
People's offer on the day of trial to strike the life enhancement
allowed [defendant] the opportunity to guarantee himself a
5
determinate sentence.

6   *Id*.  However, counsel's statement was in error because the 25-to-life gun

7   enhancement does not, in fact, attach to an assault with a deadly weapon charge.[3]

8   If Petitioner had only been convicted of "245s," assault with a deadly weapon, his

9   sentence would have been determinate as he would not have been subject to that

10  enhancement.

11       On appeal, Petitioner argued that "the misadvice defense counsel gave at

12  the motion to withdraw the plea deprived [Petitioner] of competent representation

13  based on his lack of understanding of the consequences of his guilty plea and his

14  innocence of attempted murder." *Lopez*, 2003 WL 21481036, at 4.  Although

15  Petitioner contends that the plea was invalid based on counsel's misadvice,

16  Petitioner attached to his habeas petition in the state appellate court a declaration

17  from defense counsel which affirmatively stated that he did not misadvise

18  Petitioner prior to the hearing:

19
During the Marsden hearing, I misspoke when I implied that
a 25-Life commitment attached to a conviction for Penal Code
20
section 245 . . . I intended to say that a conviction of
unpremeditated murder would result in a life term . . . I did not
21
advise Mr. Lopez, prior to the entry of his plea, that the 25-Life
enhancement would attach to a Penal Code section 245 conviction.
22

23  Decl. of Kipp Davis in Support of State Habeas Petition, Exhibit E.  The California

24  Court of Appeal found no evidence that defense counsel told Petitioner before the

25  _____

26       [3]  The firearm use enhancement applies only to assault with a firearm on a
peace officer or firefighter.  *See* Cal. Penal Code § 12022.53.

27

28                                      11

entry of the pleas that a life sentence would attach to a charge of assault with a deadly weapon. The court further found that, prior to defense counsel's misstatement at the *Marsden* hearing, Petitioner had not pointed out this mistake in his letters to the court or his verbal statements to the court.  Based largely on these findings, the California Court of Appeal concluded that Petitioner :

> [D]id not establish that the misadvice that Davis gave at the motion to withdraw the pleas was the basis for defendant's decision to enter the pleas in the first place. The advisement that defendant was given in court, on the record, was correct. Defendant's responses to the court that he had not been pressured to enter the pleas, that he understood what he was doing, and that he gave up his trial rights freely and voluntarily were unequivocal. At the hearing on the *Marsden* motion, defendant had the opportunity to explain the basis of his dissatisfaction with Davis. The court required Davis to respond minutely to defendant's complaints. Davis had investigated the case, considered the contradictions in the statements Villalobos gave to the police, at preliminary hearing, and thereafter, and adequately forecast their effect on the jury. His advisement to plead guilty was well-grounded in reality. The single mistake he made after the pleas were entered had no bearing on the decision whether to enter the pleas.

*Lopez*, 2003 WL 2148103, at 6.  The court accordingly rejected Petitioner's ineffective assistance of counsel claim.

### A.   Legal Standard

A defendant who enters a guilty plea on the advice of counsel may generally only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases.  *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *United States v. Signori*, 844 F.2d 635, 638 (9th Cir. 1988).

A defendant must satisfy the two-part standard of *Strickland*, 466 U.S. at 687, i.e., that counsel's performance was deficient and that the deficient performance prejudiced his defense, and establish the prejudice requirement by showing that there is a reasonable probability that, but for counsel's errors, he

12

would not have pleaded guilty and would have insisted on going to trial.  *See Hill*, 474 U.S. at 57-59; *Iaea v. Sunn*, 800 F.2d 861, 864-65 (9th Cir. 1986).

A defendant generally cannot establish prejudice under *Hill* if he received significant benefits from his plea agreement.  Counsel may commit serious errors, but as long as counsel succeeds in substantially reducing the sentence defendant would have likely received had he gone to trial, there is no prejudice.  *See United States v. Baramdyka,* 95 F.3d 840, 845-47 (9th Cir. 1996) (counsel's failure to assert viable defense to charge that results in probation does not prejudice defendant when conviction on another, more serious charge is valid and other, valid charges are dismissed).  A mere inaccurate prediction regarding the potential sentence is insufficient to establish ineffective assistance; petitioner must establish a "'gross mischaracterization of the likely outcome' of a plea bargain 'combined with . . . erroneous advice on the probable effects of going to trial.'" *Sophanthavong v. Palmateer,* 378 F.3d 859, 868 (9th Cir. 2004) (citing *United States v. Keller*, 902 F.2d 1391, 1394 (9th Cir. 1990)); *see also Weaver v. Palmateer*, 455 F.3d 958, 966-69 (9th Cir. 2006) (finding no reasonable prejudice from counsel's advice regarding petitioner's likely sentence from pleading guilty because the state court record showed that petitioner had a strong desire to avoid trial, and that counsel had not advised petitioner as to what sentence he would actually receive).

**B.    Analysis**

The California Court of Appeal's rejection of Petitioner's ineffective assistance of counsel claim was not contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d).  In order to assert a successful ineffective assistance of counsel claim, Petitioner would first

have to establish that defense counsel's mistake occurred prior to Petitioner's guilty plea, i.e., that Petitioner relied on counsel's mistaken advice when he pled guilty.   Petitioner fails to meet this burden.  Based on the evidence presented, the California Court of Appeal made the factual findings that defense counsel made a "single mistake" by misspeaking about his advice to Petitioner at the *Marsden* hearing after the pleas had already been entered, and that this mistake "had no bearing on [Petitioner's] decision whether to enter the pleas."  *Lopez*, 2003 WL 21481036, at 6.  This Court must presume the California Court of Appeal's factual determinations in this regard is correct unless Petitioner rebuts the state court's findings by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  Petitioner has not provided this Court with any evidence whatsoever, much less clear and convincing evidence, to rebut the California Court of Appeal's factual findings.  To the contrary, the declaration by defense counsel submitted on Petitioner's appeal that he did not misadvise Petitioner supports the California Court of Appeal's factual findings on this point.  Because Petitioner has not established any support for the argument that he relied on defense counsel's mistake when he pled guilty, Petitioner's claim fails.

Even if Petitioner established that defense counsel's performance was deficient, in that defense counsel committed a "serious error," he would not be able to establish prejudice because defense counsel succeeded in substantially reducing the sentence Petitioner would have likely received had he gone to trial by means of the plea bargain.  *See Baramdyka,* 95 F.3d at 845-47.  Petitioner does not challenge what defense counsel identified in the *Marsden* hearing as "weaknesses" in his case, such as Ms. Villalobos' allegations as discussed above.  RT at 36.  Recognition of these weaknesses led defense counsel to conclude, quite reasonably, that if Petitioner went to trial, a jury would likely reach "a compromise

14

verdict of attempted murder without premeditation and deliberation . . . that . . . would still result in an indeterminate life commitment because of the 12022.53(d) firearm enhancement."   Exhibit E.

By advising Petitioner to accept the plea bargain, which guaranteed a determinate sentence, defense counsel clearly "reduced the sentence Petitioner would have likely received had he gone to trial," i.e., an indeterminate life commitment.  It cannot be said that defense counsel rendered ineffective assistance.  Petitioner is not entitled to federal habeas relief on his ineffective assistance of counsel claim because the California Court of Appeal's rejection of the claim was not contrary to, or involved an unreasonable determination of, clearly established Supreme Court precedent, or involved an unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d).

**3.**      **Failure to Provide an Interpreter**

Petitioner claims that he was deprived of due process because the trial court failed to provide him with an interpreter when he pled guilty.  Petitioner notes that he was "assisted by an interpreter at virtually every other hearing in [t]his case," except at the change of plea hearing when he pled guilty.  Pet. at 6.  Petitioner claims that his need for an interpreter at this hearing was "particularly acute" because "sentencing was complicated."  *Id*. at 7.  By being "denied" an interpreter at this "crucial" juncture, Petitioner claims that the court violated his rights under the Sixth and Fourteenth Amendments to the U.S. Constitution.  *Id*.

**A.**      **Legal Standard**

Due process requires that a guilty plea be both knowing and voluntary because it constitutes the waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination.  *See Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). It does not,

15

however, require a state court to enumerate all the rights a defendant waives when he enters a guilty plea as long as the record indicates that the plea was entered voluntarily and understandingly. *See Rodriguez v. Ricketts*, 798 F.2d 1250, 1254 (9th Cir. 1986), cert. denied, 479 U.S. 1057 (1987); *Wilkins v. Erickson*, 505 F.2d 761, 763 (9th Cir. 1974). A habeas petitioner bears the burden of establishing that his guilty plea was not knowing and voluntary. *See Parke v. Raley*, 506 U.S. 20, 29-30 (1992), 31-34.

The long-standing test for determining the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Id*. at 29 (quoting North *Carolina v. Alford*, 400 U.S. 25, 31 (1970)). This requires a review of the circumstances surrounding the plea. *See Brady v. United States*, 397 U.S. 742, 749 (1970). Of particular importance is that defendant enter a guilty plea with sufficient awareness of the relevant circumstances and likely consequences, *id*. at 748, and that he understand the law in relation to the facts, *McCarthy v. United States,* 394 U.S. 459, 466 (1969). A guilty plea not made voluntarily and intelligently violates due process. *See Boykin*, 395 U.S. at 242.

A defendant cannot withdraw his guilty plea by claiming he did not understand English well enough when the record proves otherwise. *See United States v. Nostratis*, 321 F.3d 1206, 1208-11 (9th Cir. 2003) (refusing to allow withdrawal of a guilty plea under Fed. R. Crim. P. 11(d)(2)(B) where defendant claimed he did not understand English well enough to comprehend his plea agreement, but the record showed that defendant used English in court proceedings, did not use an interpreter to communicate with counsel, there was a two-year delay in making the motion, and the motion was made only after defendant learned his likely sentence).

16

//

### B.   Analysis

There are no indications that Petitioner's acceptance of his plea was not knowing and voluntary.  To the contrary, at the change of Plea hearing, Petitioner, speaking English without the aid of a translator, repeatedly demonstrated a comprehension of his plea agreement.  For example, when the prosecutor explained the proposed changes in the plea bargain, the court asked Petitioner:

> THE COURT: Do you understand [the proposed changes]?
> [PETITIONER]: Yes, I understand, Your Honor.
> THE COURT: Now, you have had enough time to talk to your lawyer about this?
> [PETITIONER]: Yes.
> THE COURT: Do you understand what you are charged with here?
> [PETITIONER]: I understand.
> THE COURT: Did you talk to your lawyer about the ways in which you could defend yourself against the charges?
> [PETITIONER]: Yes, I did.
> THE COURT: Now, you understand that you have to go to state prison on this case.  That's obvious; right?  So you are not going to get any probation.
> [PETITIONER]: Yes, Your Honor
> THE COURT: Upon your release from state prison, you will be on parole for . . . up to three years.  If you violate parole, you can receive additional time in state prison.  You also have what's known as a prison prior.
> Do you understand that?
> [PETITIONER]: Yes, Your Honor.

RT at 8-9.  After going over some more specifics of Petitioner's plea agreement, the court inquired as to how much education Petitioner had.  *Id*. at 12.  Petitioner responded that he had three months of schooling in Mexico in his entire life.  *Id*. To once again ensure that Petitioner, lacking any significant education, nonetheless understood the terms of the plea agreement, the court proceeded :

> THE COURT: But you understand everything we are talking about; is that correct?
> [PETITIONER]: Yes, Your Honor.
> THE COURT: If there is something you don't understand or you have a question, you just let me know, and you can talk to your lawyer or ask a question.
> Do you understand that?
> [PETITIONER]: Yes, Your Honor.

*Id.* Notably, after Petitioner pled guilty on all counts, the court declared that "the change of plea transcript shows that [Petitioner] understand[s] English very well." *Id.* at 51.

Further reference to the record in this case reinforces the notion that Petitioner understood English "very well," and certainly well enough to comprehend the plea agreement. For instance, the five letters that Petitioner wrote to the court lodging complaints against defense counsel were all written after Petitioner pled guilty and, significantly, all written in English . *See Nostratis,* 321 F.3d at 1211-12 (use of English in court proceedings undermines Petitioner's argument that he did not understand English well enough to comprehend his plea agreement). Additionally, defense counsel at the *Marsden* hearing made the following statement: "For the record . . . all of my discussions with Mr. Lopez have been conducted in English and I have not sensed that he lacked any understanding . . . I have not had any problems communicating with him in English." RT at 41. *See Nostratis,* 321 F.3d at 1211-12 (absence of interpreter in communications with counsel undermines Petitioner's argument that he did not understand English well enough to comprehend his plea agreement). Petitioner is not entitled to federal habeas relief on this claim. *See* 28 U.S.C. § 2254(d).

## CONCLUSION

After a careful review of the record and pertinent law, the court is that the petition for writ of habeas corpus must be DENIED. The clerk shall enter judgment in favor of respondent and close the file.

IT IS SO ORDERED.

Dated: July 24, 2007

_____
JEFFREY S. WHITE
United States District Judge

18

1

2

3                        UNITED STATES DISTRICT COURT

4                                    FOR THE

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7
   LOPEZ,
8                                              Case Number: CV04-01621 JSW
                      Plaintiff,
9                                              **CERTIFICATE OF SERVICE**

10      v.

11   MCGRATH et al,

12                    Defendant.
     _____/

13
   I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
14   Court, Northern District of California.

15   That on July 24, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said
     copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing
16   said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery
     receptacle located in the Clerk's office.

17

18

19   Guadalupe Lopez T-40872
     CMC East, cell #2383
20   P.O. Box 8101
     San Luis Obispo, CA 93409-8101
21
   Ryan Blake McCarroll
22   California Attorney General's Office
     455 Golden Gate Avenue, suite 11000
23   San Francisco, CA 94102

24   Dated: July 24, 2007              *Jennifer Ottolini*

25                                     Richard W. Wieking, Clerk
                                       By: Jennifer Ottolini, Deputy Clerk
26

27

28